GARY M. RESTAINO
United States Attorney
District of Arizona

DIMITRA H. SAMPSON
Arizona State Bar No. 019133
Email: dimitra.sampson@usdoj.gov
JILLIAN BESANCON
California State Bar No. 285869
Email: jillian.besancon@usdoj.gov
LINDSAY L. SHORT
Arizona State Bar No. 034125
Email: lindsay.short@usdoj.gov
KRISSA M. LANHAM
Arizona State Bar No. 035085
Email: krissa.lanham@usdoj.gov
RYAN POWELL
Arizona State Bar No. 025695
Email: ryan.powell@usdoj.gov
Assistant U.S. Attorneys
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| United States of America, | Case No. CR-22-08092-PCT-SMB |
|---|---|
| Plaintiff, | |
| v. | **NOTICE REGARDING PRO SE DEFENDANTS' JAIL COMMUNICATIONS** |
| Samuel Rappylee Bateman, et al., | |
| Defendant. | |

Samuel Bateman and Josephine Bistline, two defendants in this 11-defendant child exploitation prosecution, are currently self-represented. The original indictment alleges obstruction of justice charges against Bateman, which he committed through his jail communications from Coconino County Jail. The first superseding indictment charges that Bateman used his jail communications privileges at CoreCivic to facilitate the kidnapping of children alleged as victims in the indictment, committing additional crimes of

obstructing justice and witness-tampering as he did so. The second superseding indictment charges Bateman with again obstructing justice by witness-tampering through his jail communications. Josephine Bistline similarly is charged with using electronic communications to make threats and influence official proceedings, and has continued to do so through her jail communications.

Notwithstanding that some communications restrictions are justified by these defendants' history, the United States is mindful that these or future pro se defendants in this case may use monitored jail communications to communicate legal strategy.[1] Therefore, the United States hereby advises the Court and defendants of measures it has implemented to insulate such communications from review by the trial team. These measures will only apply to (1) defendants that the Court allows to proceed pro se, and (2) jail communications in the possession of the United States (or that come into its possession) with a recording date on or after the date of the order permitting pro se status.

## I. **Factual and Procedural Background**

The United States' response to Bateman's motion to preclude pretrial punishment (ECF No. 58), the second superseding indictment (ECF No. 104), and the complaint (ECF No. 3) and response to Bistline's motion for *de novo* review of detention (ECF No. 34) in now-dismissed No. CR-23-517-PHX-SMB, and attachments thereto, all contain factual history regarding these defendants' use of communications facilities to obstruct justice and commit additional crimes. These pleadings are incorporated fully by reference and only summarized here.

**A. Bateman's use of jail communications to obstruct justice, kidnap children, and tamper with witnesses**

Throughout Bateman's pretrial custody to date, and regardless of which facility has

---

[1] Bateman and Bistline are currently the only defendants permitted to proceed pro se. Although the docket indicates that Leilani Barlow asked to represent herself at her arraignment (ECF No. 135), the docket does not reflect that she is proceeding pro se and her attorney advised the government via email on July 11, 2023, that she asked for continued representation. Her attorney Mr. Miller stated that he intends to file a motion to clarify that he continues to represent Leilani Barlow on the docket.

housed him, he has used jail communications systems to obstruct justice and commit additional crimes. Specifically:

- Coconino County Jail, August 28-September 2, 2022: Bateman was temporarily detained on child endangerment charges on August 28, 2022, based on his conduct of towing a box trailer with at least three minor females unsecured inside it. He made phone calls from the Coconino County Jail directing his followers to "delete my Signal account now, the whole thing, delete every message, right now." Bateman is charged in Counts 40-44 of the second superseding indictment with crimes committed through this conduct.

- CoreCivic/Central Arizona Florence Correctional Complex (CAFCC), September 13, 2022-December 1, 2022: After Bateman's federal arrest, nine children, all believed to be "wives" of Bateman, were taken into Arizona Department of Child Services (DCS) custody on September 14, 2022. Using the communications systems at CAFCC, Bateman conspired with others to remove the girls from their DCS placements, culminating in the abduction of eight out of the nine children on November 27, 2022. Bateman made numerous recorded video calls from CAFCC while coordinating the kidnappings. For example, on the morning of November 28, 2022, Bateman made a monitored video call from CAFCC to co-defendant Naomi Bistline. Naomi Bistline told Bateman that one of the nine girls was not with them, and Bateman said they needed to get her. The video panned to all eight minors taken from DCS custody. Bateman is charged in Counts 47-48 of the second superseding indictment with obstruction charges arising from these jail communications, and in Counts 49-50 of the second superseding indictment with kidnapping charges arising from these communications. (*See* also second superseding indictment, ECF No. 104, ¶¶ 301-314.)

- CoreCivic/Central Arizona Florence Correctional Complex (CAFCC), September 13, 2022-November 29, 2022: While at CAFCC, Bateman also engaged in explicit sexual conversations through three-way conversations facilitated by his adult "wives" with the child victims in this case. For example, on November 26, 2022, Bateman spoke to Jane

Doe 4, a 13-year-old in DCS custody, who was on another phone line when Bateman participated in a monitored video call with some of his adult "wives." Bateman called Jane Doe 4 his "sexy darling" and made statements to her including, "I just want to rip off your bra and suck on your titties and fuck you."

- <u>CoreCivic/Central Arizona Florence Correctional Complex (CAFCC), September 13, 2022-November 29, 2022</u>: Bateman also used CAFCC's jail communications systems to direct witness intimidation and influence potential testimony. For example, on November 26, 2022, using the CAFCC video call system, Bateman asked one of his "wives" to send a government witness a verse of scripture stating in part: "Wo [*sic*] unto all those that discomfort my people, and drive, and murder, and testify against them, saith the Lord of Hosts; a generation of vipers shall not escape the damnation of hell." Bateman is charged in Counts 51-52 of the second superseding indictment with obstruction and witness-tampering charges arising from these communications.

**B. Bistline's use of communication devices to tamper with witnesses and commit additional crimes**

Bistline is one of Bateman's adult "wives" and is the mother of Jane Doe 8 and Jane Doe 9, both children that Bateman acquired or took as "wives." DCS obtained temporary custody of Jane Doe 8 and Jane Doe 9 on September 14, 2022, after Bateman was arrested as described above. Jane Doe 8 is a victim in the state child abuse proceedings against Bateman, Coconino County Sup. Ct. No. CR-2022-00965, and both she and Jane Doe 9 were among the children kidnapped on November 27, 2022. The girls were found in Spokane, Washington, on December 1, 2022, and returned to DCS custody.

At that time, Bistline had not been charged and remained out of custody. As detailed in the second superseding indictment, the complaint (ECF No. 3) in No. 23-CR-517-SMB, and the government's response to Bistline's motion for *de novo* review of detention, Bistline sent a series of harassing emails to various individuals involved in Bateman's state dependency proceedings and federal case. Specifically:

- <u>November 30, 2022, email to Arizona Assistant Attorney General</u>. Bistline sent an email to an Arizona Assistant Attorney General involved in the child custody case stating: "…THESE GIRLS ARE PURE AND CLEAN. BY THE LOVE AND GRACE OF GOD, YOU WILL NOT HAVE POWER TO LIFT YOUR OWN SPOON OR WIPE YOUR OWN NOSE, SAVE YOU CONFESS TO THE WORLD AND REPENT OF YOUR WICKED DOINGS THAT YOU HAVE TRIED TO HIDE FROM GOD AND ALL MEN, UNDER THE PRETENCE OF BEING A GOVERNEMNT OFFICIAL."

- <u>March 24, 2023 email to DCS worker C.B</u>. Bistline sent an email to C.B. giving C.B. three days to return the children from DCS custody, stating in part: "I dare you to return the girls, from where you got them--…Your prison experience will be behind a ventilator, with help to breathe, to blink, to clean up anything that runs. And, you know, I wouldn't mind helping with that too. Because I love you! But you have gone too far. We are done. 3 days. 9 girls." Bistline is charged in Counts 54 and 55 of the second superseding indictment with threats and cyberstalking based on this and other communications.

- <u>March 25, 2023 email to Assistant U.S. Attorney prosecuting Bateman</u>. Bistline sent an email to an AUSA assigned to the case, stating in relevant part: "For what you are doing to Samuel and His little flock, you shall pay for, dearly. MARK IT. God will not allow you to use the money for anything, not even toilet paper. And you will watch some random off the street step into your life, take your house, your car, your boat, your family, your hobby, everything you own, or think you own- and use and blow them to the 4 winds of the earth. Your house will be left desolate, and your family and friends will laugh at your calamity….Any law officer that pokes his shitty ass into this will lose his badge, his family and friends, and his honor among men….To hell with 'due process'. That's not legal either. Drop it."

Bistline was arrested pursuant to the federal complaint on March 29, 2023, at CAFCC when she arrived to visit an inmate. She resisted arrest, resulting in minor injuries

to an FBI agent. Arresting agents discovered that Bistline had concealed in her clothing photographs to smuggle into the facility. She has remained in CAFCC custody since that date. Bistline's jail communications are not restricted except that she is not allowed in-person visits because they cannot be monitored.

**C. The parties stipulated to allow Bateman some communications; Bateman violated the stipulation**

On November 29, 2022, based on the kidnapping and other events described above, Bateman's communications privileges at CAFCC were restricted. By the next day, Bateman was already attempting to circumvent those restrictions by using the PIN number of another detainee to attempt to make a call. Bateman's attempts to circumvent CAFCC's restrictions continued unabated through at least March 3 and included using the other detainee's PIN number again and his "wives'" creation of new email addresses not on his "blocked" list—which, for example, resulted in Bateman receiving 33 emails from a co-conspirator using a new email address created in the name of "Elaine Bateman" (a code name) on March 3 alone.

- <u>Bateman's motion to preclude pretrial punishment (ECF No. 55)</u>: On February 21, 2023, Bateman (through counsel) filed a motion alleging that the CAFCC restriction preventing him from contacting anyone other than his attorneys violated his due process and First Amendment rights. He argued that despite his prior witness-tampering activities, the restrictions did not reasonably relate to a legitimate governmental objective because "there is no concern Mr. Bateman may tip off co-conspirators because all of his co-defendants are in custody." (ECF No. 55 at 4.)

- <u>The parties' stipulation (ECF No. 68)</u>: Although the government opposed Bateman's motion (ECF No. 58), it agreed at a hearing on March 6 that Bateman could immediately begin communicating with his three sons and correspond in writing with individuals who were not victims or co-defendants. (ECF No. 64.) While the parties were negotiating the stipulation, Bateman put in a request for an attorney privileged number, but when CAFCC called to verify that the individual was an attorney, the

6

person sounded very nervous and hung up. The parties ultimately stipulated to restore other limited communications on March 17. Specifically, Bateman would be permitted "phone calls with his sons" and video visits for one hour three times a week with six named females provided that the visits "be limited to only one of the six individuals…at a time." (ECF No. 68 at 1-2.) The stipulation further permitted Bateman to communicate by letter with "anyone except the alleged victims" and three of his co-defendants, "but only if the sender and recipient of the mail is clearly identified, and messages are not being passed to others through these letters." (ECF No. 68 at 2.) Bateman stipulated that he would "not communicate in any way with anyone not authorized during his phone calls and video visits," including "sending and receiving messages to others through his approved contacts." (ECF No. 68 at 3.) The parties agreed that the stipulations mooted Bateman's motion and asked the Court to deny it as moot, which the Court did. (ECF No. 68 at 3; ECF No. 69.)

- <u>Bateman violated the stipulation</u>. Within days of the formal entry of the stipulation, Bateman had violated it. For example, Bateman used his sons to relay messages to the women; one son even had a recorder installed on his phone so he could record messages from Bateman and play them for the "wives." Bateman also tried to make video calls outside of the parties' stipulated times.

- <u>With limited communications restored, Bateman directed others to obstruct justice</u>. In that same time period, through his sons, Bateman attempted to obstruct justice. For example, on March 22, 2023, Bateman called his son, Parley. Bateman first instructed Parley to file "malice charges" on witness JJ, then directed: "Now, I also need somebody to file sanctions – and you can talk to Jam, she'll explain all this -- on David G. Campbell, he's my judge, wickeder than a hell froze over son of a bitch. … The prosecuting attorneys…both need a bunch of Napue violations filed on them….Sue the shit out of them. And, also, I need somebody to tell me – tell that prosecuting attorney to get my damn mail….Get bold with them so they know that you're sick of it." Regarding witnesses, Bateman directed, "And I need somebody to tell those people that

are gone [referring to the girls in DCS custody] to plead the Fifth. They don't – tell them to not say a damn word. It's none of their fucking business to question them now. So, somehow, get that message to all those people." The transcript of the entire call, redacted to remove certain names, is attached as Exhibit A. This call, and others like it, formed the basis for the witness-tampering charge alleged in Count 53 of the second superseding indictment.

Based on the above-described conduct, on March 24, 2023, Bateman's communications privileges were restricted again.

### D. Bateman and Bistline continued to engage in concerning jail communications

With Bateman still in custody and Bistline in custody as of March 29, 2023, they continued to violate court orders restricting communications with co-defendants and CAFCC policies. For example:

- On March 25, 2023, Bistline wrote a letter to Bateman stating "We are preparing to sue the <u>SHIT</u> out of some people!" and naming DCS worker C.B., the FBI case agent, and an AUSA assigned to the prosecution. Bistline described "looking into [an AUSA's] background," saying "it feels like her days aren't numbered – their [sic] over."

- In the few days leading up to April 12, 2023, Bateman created approximately five new email accounts using code names, and managed to generate approximately 10 pages of communications with his "wives."

- On May 7, 2023, Bistline sent a letter via CAFCC mail to subsequently-charged co-defendant Leilani Barlow, stating, "All who hear of the fate of the prosecutors of Samuel Rappylee Bateman and His pure and Innocent ones, will fear to offend Him, and it shall be remembered for a long long time. WATCH! Samuel Rappylee Bateman – WE ARE HERE TO DO YOUR WILL – GOD'S WILL – AND I KNOW IT!"

- On June 1, 2023, Bateman sent CAFCC staff a message saying he was "on the court record as a pro se litigant" and claiming that Dan Bailey (a non-lawyer) and another non-lawyer unindicted co-conspirator were his attorney assistants and Parley Bateman

8

"is on record as my legal runner," so phone access to those individuals must be restored. Bateman had not been permitted to represent himself when he sent the message.

### E. Bateman and Bistline are permitted to represent themselves

At a status hearing on June 13, 2023, the Court conducted a *Faretta* hearing to determine whether Bateman would be allowed to represent himself. After ensuring that Bateman understood that "the rules" wouldn't be relaxed for him and his waiver of counsel was knowing and voluntary, the Court permitted Bateman to proceed pro se. (RT 6/13/23 11-12.) The Court also warned Bateman that if he attempts to request "protected conferences with any other than your [advisory] attorney, that won't be allowed," and "you can't have nonlawyers file something on your behalf or meet with you to consult with you at CoreCivic in the same way as you would with an attorney." (RT 6/13/23 16.) Bateman said he understood. (RT 6/13/23 16.) The Court later informed Bateman that although it was not aware of his "specific restrictions at CoreCivic[,]" "[g]enerally, it is more difficult, when you're in custody, to represent yourself, which is another good reason not to do it, but that's why advisory counsel is appointed." (RT 6/13/23 18.)

Bateman claimed at the hearing that he had "been in lockdown since November 29th of last year," unable "to make any phone calls to my family even." (RT 6/13/23 18.) His former attorney explained that they "made an agreement with the government"—i.e., the stipulation—but "that didn't work out." (RT 6/13/23 19.) Counsel advised, and the Court affirmed, that if Bateman wanted to "reanimate" the communications restrictions issue then "he should file a motion now that he represents himself laying out exactly what his requests are[.]" (RT 6/13/23 19.) As of the date of this notice, no such motion has been filed.

The following day, the Court conducted a *Faretta* hearing and determined that Bistline would also be permitted to represent herself. (CR 149.)

### II. Applicable Law

A defendant in a criminal case has the right to waive assistance of counsel and represent himself. *Faretta v. California*, 422 U.S. 806, 833 (1975). That right entails not only representing oneself, but representing oneself meaningfully. *United States v. Farias*,

9

618 F.3d 1049, 1053 (9th Cir. 2010). What is necessary for meaningful representation is context-specific and may range from reasonable access to "law books, witnesses, or other tools to prepare a defense" to simply having the time to prepare. *Id.*; *United States v. Sarno*, 73 F.3d 1470, 1491 (1995); *Milton v. Morris*, 767 F.2d 1443, 1446 (9th Cir. 1985), *abrogated in part by Kane v. Garcia Espitia*, 546 U.S. 9, 10 (2005) (per curiam). However, pro se defendants are not entitled to resources "over and above" what is provided to the general inmate population. *United States v. Beale*, 574 F.3d 512, 520 (8th Cir. 2009). And more generally, the right to access the tools to prepare a defense as a self-represented litigant "is not unlimited" and must be "balanced against the legitimate security needs or resource constraints of the prison." *Sarno*, 73 F.3d at 1491; *see also Schwerdtfeger v. Lamarque*, No. C 02-5672 SI (PR), 2003 WL 22384765, at *7 (N.D. Cal. Oct. 8, 2003) ("We are mindful that this right is not unlimited. Security considerations and avoidance of abuse by opportunistic or vacillating defendants may require special adjustments.") (quoting *Milton*, 767 F.2d at 1446).

A jail's monitoring of the communications of pretrial detainees is constitutional. *See United States v. Van Poyck*, 77 F.3d 285, 291 (9th Cir. 1996) ("We hold that any expectation of privacy in outbound calls from prison is not objectively reasonable and that the Fourth Amendment is therefore not triggered by the routine taping of such calls."); *United States v. Mitan*, Nos. 08-760-1, 08-760-2, 2009 WL 3081727, at *4 (E.D. Pa. Sept. 25, 2009) ("there is no issue here as to the propriety of the [detention center's] monitoring [a pro se pretrial detainee's] telephone calls"). Monitoring communications between a non-lawyer pro se pretrial detainee and other non-lawyers likewise does not violate the Fifth or Sixth Amendments, or attorney-client privilege. *See United States v. Scott*, 521 F.2d 1188, 1191 (9th Cir. 1975) (holding no Fifth or Sixth Amendment violations when undercover agent was present for strategy discussions amongst pro se defendant's non-lawyer team, because defendant "had waived or renounced his right to counsel and prepared for trial and tried the case without an attorney[,]" apparently "enlist[ing] the assistance of a group of fellow tax resisters to help him in his own defense."); *see also id.* at 1192 (communications

10

also were not privileged because none of pro se defendant's statements "were made in the preserve of counsel, in the hearing of counsel, or in connection in any way with the legitimate defense of the…prosecution"). Even if there were constitutional concerns with such monitoring, "institutional security concerns justify such recordings" and render them reasonable. *Van Poyck*, 77 F.3d at 291.

Restricting communications access for a pretrial detainee is likewise constitutional when reasonably related to a legitimate government interest. *See Bell v. Wolfish*, 441 U.S. 520, 546 (1979) ("maintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of…pretrial detainees"); *Overton v. Bazzetta*, 539 U.S. 126, 134 (2003) ("Withdrawing visitation privileges is a proper and even necessary management technique to induce compliance with the rules of inmate behavior.").[2] An institution may not impose such restrictions "with the express intent to punish," but it may do so for legitimate correctional reasons—for example, preventing a defendant from violating a no-contact order, witness tampering, or committing further crimes from within an institution. *See Lewis v. King County Jail*, No. C15-1633-JLR-JPD, 2016 WL 8193689, at *4 (W.D. Wash. Oct. 24, 2016).

This is true even when a pretrial detainee is representing himself. *Id.* (holding pretrial telephone "deadlock" did not violate pro se defendant's constitutional rights where he had engaged in witness tampering and violated no-contact order). Where a pro se pretrial detainee has abused communications privileges, various courts have upheld restrictions on those privileges so long as a work-around—such as standby counsel to facilitate discovery review or to be present for witness preparation calls—ensures the right to meaningful self-representation. *See, e.g.*, *id.*; *Love v. McDonnell*, No. CV-17-5356 ODW (AS), 2017 WL 7049526, at *12 (C.D. Cal. Dec. 12, 2017) (upholding, under AEDPA review, California

---

[2] Although *Overton* apparently concerned convicted inmates, the Ninth Circuit evaluates communications curtailments for pretrial detainees under the same standard. *Van Poyck*, 77 F.3d at 291 n.10.

11

Court of Appeal decision that trial court did not abuse its discretion by restricting pro se defendant's communication privileges where defendant had misused those privileges to commit witness tampering). *See also United States v. Janis*, 820 F. Supp. 512, 517-18 (S.D. Cal. 1992) (declining to decide whether pro se defendant who had *not* abused communications privileges had right to unmonitored calls to investigators and witnesses because he had unmonitored access to standby counsel and court-appointed investigator).

In sum, criminal defendants have a right to represent themselves and to access the tools to make such representation meaningful. But: (1) they do not have a right to special privileges beyond those available to any other pretrial detainee; (2) all communications with non-lawyers may be monitored; and (3) where they have abused access to jail communications, their privileges may be curtailed so long as they nevertheless have a means to effectuate that meaningful self-representation.

## III. <u>The United States will continue to review all recorded communications, but insulate them from the trial team</u>

The United States, as is evident from the second superseding indictment and various pleadings (including this one), has been obtaining jail communications for the defendants in this case. Recorded jail conversations from CAFCC have already provided probable cause for several charges in the second superseding indictment. The government therefore hereby notifies both the Court and the defendants in this case that it intends to continue to obtain and review CAFCC's recorded communications. For represented defendants, consistent with CAFCC's policies and its own, the government is not provided with privileged communications between a defendant and his or her attorney. For self-represented defendants, the government is not provided with communications between a defendant and his or her stand-by counsel. However, communications between self-represented defendants and non-lawyers are not privileged. *See Scott*, 521 F.2d at 1192 ("[N]othing in [*Faretta*] would indicate it intended to enlarge the sixth amendment protection to a Pro se defendant and his friends"); *United States v. Kelley*, 539 F.2d 1199, 1203 (9th Cir. 1976) ("[T]here is no indication in *Faretta* that the Sixth Amendment right

to counsel refers to assistance by any person other than a lawyer."). Thus, the government intends to continue to obtain all communications of the pro se defendants except for those communications with standby counsel.

Recognizing, however, that the pro se defendants may engage in strategy discussions with witnesses, investigators, and experts, the government intends to have AUSAs and investigators *not* on the trial team reviewing their communications. *See United States v. Mitan*, Nos. 08-760-1, 08-760-2, 2009 WL 3081727, at *2-*4 (E.D. Pa. Sept. 25, 2009), *aff'd*, 499 F. App'x 187 (3d Cir. 2012) (finding no prejudice in trial team's monitoring of pro se lawyer-defendant's strategy communications but suggesting that continued use of taint agents and notifying the court of the monitoring would have been preferable). If the non-trial AUSAs and investigators find material that should be disclosed to the trial team—for example, because it evidences the commission of additional crimes, threats, obstruction, or is inculpatory of those crimes already charged—they will apply to the Court for permission to disclose those communications to the trial team.

Although the law does not require such measures, the government notifies the Court that it will voluntarily segregate a pro se defendant's recorded communications from the trial team and disclose them to trial prosecutors only with the Court's approval.

## IV.    If legitimate restrictions hamper self-representation, a pro se defendant should request appointment of counsel

In many of the cases cited above, pro se defendants complained that communications restrictions impeded their ability to meaningfully represent themselves. But where a court has held that the restrictions are justified by a defendant's conduct—as they are here—there's an easy answer: a defendant may choose to accept the assistance of counsel or conduct trial preparation activities through or with standby counsel. That choice is consistent with *Faretta. See* 422 U.S. at 835 ("When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel"); *United States v. Melillo*, 631 F. App'x 761, 775 n.11 (11th Cir. 2015) ("[l]ogistical issues arising from Defendant's incarceration, however,

were a reality that the court could not change and one that Defendant necessarily accepted when he chose to represent himself"). This choice should not surprise Bateman, because it is consistent with the warning the Court gave when he mentioned his restricted communications at his *Faretta* hearing. (*See* RT 6/13/23 18 ("[g]enerally, it is more difficult, when you're in custody, to represent yourself, which is another good reason not to do it, but that's why advisory counsel is appointed").)

Bateman, Bistline, and any other defendants who later choose to represent themselves are therefore explicitly notified that the government intends to continue to monitor their communications with all persons other than stand-by counsel through personnel who are not on the trial team. If they find themselves unable to meaningfully represent themselves within the bounds of restrictions that are justified by their prior conduct and necessary to prevent further crimes, they should seek court-appointed counsel or help from their stand-by lawyers.

Respectfully submitted this 19th day of July, 2023.

GARY M. RESTAINO
United States Attorney
District of Arizona

s/ Dimitra H. Sampson
DIMITRA H. SAMPSON
JILLIAN BESANCON
LINDSAY L. SHORT
KRISSA M. LANHAM
RYAN POWELL
Assistant U.S. Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that on this same date, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrant(s):

Eugene Marquez
*Advisory Attorney for Pro Se Defendant (1)*
*Samuel Rappylee Bateman*

Cindy Castillo
Jose Antonio Saldivar
*Attorneys for Defendant (2) Naomi Bistline*

Sandra Kay Hamilton
*Attorney for Defendant (3) Donnae Barlow*

D Stephen Wallin
*Attorney for Defendant (4) Moretta Rose Johnson*

Mark Jeffrey Andersen
*Advisory Attorney for Pro Se Defendant (5)*
*Josephine Barlow Bistline*

Tony Rollman
*Attorney for Defendant (6) LaDell Jay Bistline, Jr.*

Gillmore Birch Bernard
*Attorney for Defendant (7)* Brenda Barlow

Jocquese Lamount Blackwell
*Attorney for Defendant (8) Marona Johnson*

Loyd C. Tate
*Attorney for Defendant (9) Leia Bistline*

Kathy L. Henry
*Attorney for Defendant (10) Torrance Bistline*

Bradley Lewis Miller
*Attorney for Defendant (11) Leilani Barlow*

I further certify that some of the participants in this case are not registered CM/ECF users. I have mailed the foregoing document by regular First-Class Mail, postage prepaid, for delivery, to the following non-CM/ECF participants:

Samuel Rappylee Bateman
Reg. No. 21338-510
Florence-AZ-Florence-CAFCC
Central Arizona Florence Correctional Complex
P.O. Box 6300
Florence, Az 85132
*Pro Se Defendant (1)*

Josephine Barlow Bistline
Reg. No. 51598-510
Florence-AZ-Florence-CAFCC
Central Arizona Florence Correctional Complex
P.O. Box 6300
Florence, Az 85132
*Pro Se Defendant (5)*

*s/ Tammie R. Holm*
U.S. Attorney's Office